Veta M. HARTMAN; Delaris Carpenter; Victor Pearn; and Mark Wolk, Plaintiffs–Appellees,

v.

REGENTS OF THE UNIVERSITY OF COLORADO; Charles Middleton, as Dean of the College of Arts and Sciences; and Leon Travis, as Assistant to the Dean of the College of Arts and Sciences, Defendants–Appellants.

No. 98CA1633.

Colorado Court of Appeals, Div. V.

July 6, 2000.

Rehearing Denied Sept. 7, 2000.*.

Certiorari Granted April 23, 2001.

* VOGT, J., would grant.

Silver & DeBoskey, P.C., Bruce H. DeBoskey, Denver, Colorado; Miller Jester & Kearney, L.L.C., Jay S. Jester, Denver, Colorado, for Plaintiffs–Appellees

Hogan & Hartson L.L.P., Kathryn W. Bradley, H. Thomas Coghill, Denver, Colorado; University of Colorado, Office of University Counsel, Joanne M. McDevitt, Senior Associate University Counsel, Special Assistant Attorney General, Denver, Colorado, for Defendant–Appellant Regents of the University of Colorado

Pryor Johnson Montoya Carney and Karr, P.C., Elizabeth C. Moran, Scott S. Nixon, Englewood, Colorado, for Defendants–Appellants Charles Middleton and Leon Travis

Opinion by Judge RULAND.

Defendants, the Regents of the University of Colorado, Dean of the College of Arts and Sciences Charles Middleton, and Assistant to the Dean Leon Travis, appeal from the order denying their motions to dismiss the claims of plaintiffs, Veta M. Hartman, Delaris Carpenter, Victor Pearn, and Mark Wolk. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff Hartman was employed by the University as a Program Assistant by the Department of Economics. Before her retirement, Hartman filed a claim for overtime pay. The University reviewed the claim, and determined that Hartman was an exempt employee under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq. (2000).

Based upon this review, the University also asserted that Hartman owed the University for wages wrongfully paid to her.

Hartman then filed suit in federal court. In her complaint, Hartman alleged that the University had violated FLSA overtime pay provisions by requiring her to work over 40 hours a week without proper compensation. In a separate claim, Hartman alleged that the individual defendants and the University had retaliated against her for exercising her rights under FLSA. Finally, Hartman alleged that both the University and the individual defendants engaged in a pattern of conduct which violated her civil rights under 42 U.S.C. § 1983 (2000).

While Hartman's federal suit was pending, the United States Supreme Court announced its opinion in *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In *Seminole Tribe,* the court held that the Commerce Clause did not authorize Congress to limit the immunity of states under the Eleventh Amendment from lawsuits in the federal courts.

Hartman then voluntarily dismissed her complaint in the federal court and re-filed her complaint in the trial court. The claim for overtime pay was certified as a class action with Hartman acting as the class representative for certain employees of the University. However, only Hartman and the three other named plaintiffs remain as parties in this case, and only Hartman alleges claims against the individual defendants.

Asserting that *Seminole Tribe* should be applied to grant it immunity in cases brought against it in state court, the University filed a motion to dismiss the plaintiffs' FLSA claims. The University also requested dismissal of plaintiffs' § 1983 claim on the grounds that the University was not a "person" under § 1983. The individual defendants filed a separate motion to dismiss Hartman's retaliation claims under FLSA on the grounds that they also enjoy sovereign immunity from suit.

The trial court denied defendants' motions based upon its conclusion that neither the University nor the individual defendants enjoyed sovereign immunity from the FLSA claims. The court also determined that the University was "a person" for purposes of § 1983 claims.

Defendants appealed, but the appeal in this court was stayed pending announcement of the United States Supreme Court's decision in *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). There, the Supreme Court held, subject to exceptions not applicable here, that the Commerce Clause did not grant Congress authority to limit states' sovereign immunity in state courts. Instead, the court held that suits against the state were appropriate only to the extent that the state waived its immunity. This appeal was then briefed by the parties for decision.

We note that the individual defendants separately appealed the trial court's denial of their motion to dismiss Hartman's § 1983 claims against them. The trial court's order was affirmed, and those claims are still pending. *See Hartman v. Middleton,* 974 P.2d 1007 (Colo.App.1998).

I.

■ Relying upon *Alden,* the University first contends that the FLSA claims and the § 1983 claim against it should be dismissed because it is an arm of the state and thus immune from these claims. We agree except insofar as plaintiffs assert non-tort claims for unpaid wages against the University.

■ Because the same factors are used to determine whether a state-created entity is an arm of the state for purposes of state sovereign immunity and to determine whether the state entity is a "person" under § 1983, we will address both here. *See Simon v. State Compensation Insurance Authority,* 946 P.2d 1298 (Colo.1997).

Section 1983 provides in relevant part:
Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law,

suit in equity, or other proper proceeding for redress. (emphasis supplied)

The University has previously been held to be a "person" within the meaning of § 1983 by our supreme court in *Uberoi v. University of Colorado,* 713 P.2d 894 (Colo.1986). However, the result in *Uberoi* was questioned in *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), where the United States Supreme Court held that a state was not a person for purposes of § 1983. Further, subsequent to *Will,* our supreme court has adopted a new balancing test in *Simon v. State Compensation Insurance Authority, supra,* that includes three factors for determining whether an entity is an arm of the state or a "person" under § 1983. Hence, we do not view *Uberoi* as controlling resolution of the issue before us.

Indeed, in *Graham v. State,* 956 P.2d 556 (Colo.1998), the court applied the three-factor *Simon* test to conclude that the University of Northern Colorado was an arm of the state. In doing so, the court overruled *Uberoi* "to the extent that it stands for the ipso facto proposition that all state universities are persons susceptible to suit under § 1983." *See Graham v. State, supra,* 956 P.2d at 562.

■ While we recognize that the *Simon* court expressly determined to defer decision on whether *Will* overruled *Uberoi,* we also conclude that the current determination of the University's status necessarily requires application of the test set forth in *Simon.* *See Simon v. State Compensation Insurance Authority, supra* (fn.2).

In *Simon,* the court held that the following three factors must be examined to determine whether an entity is an arm of the state: how the entity is characterized by state law; the level of autonomy and independence the entity enjoys from the control of the state; and whether any judgment against the entity will ultimately be paid by the state.

In applying these factors, the *Simon* court held that the Colorado Compensation Insurance Authority (CCIA) was not an arm of the state. This holding was based in part on the fact that the CCIA's enabling statute, § 8–45–101(1), C.R.S.1999, expressly stated that it was not a state agency. The court further concluded that, in creating the CCIA, the General Assembly "intended to create the equivalent of a private insurance company." *See Simon v. State Compensation Insurance Authority, supra,* 946 P.2d at 1309. The court later applied these factors in *Graham* and determined, as noted, that UNC was an arm of the state.

### A.

Consistent with *Simon* and *Graham,* we first examine how state law characterizes the University.

Unlike the CCIA, the University was created by the Colorado Constitution as a state institution of higher education. Colo. Const. art. VIII, § 5(1). Additionally, numerous statutes expressly define state institutions of higher education, including the University, as state agencies. *See* § 24–18–102(9), C.R.S. 1999 ("state agency" includes state institution of higher education); §§ 24–30–1102(5), 24–30–1118(4)(c), and 24–30–1301(12), C.R.S. 1999 (same). Further, as a state agency, like UNC, the University is expressly entitled to representation by the Colorado Attorney General. *See* §§ 24–31–201(3) and 23–20–110, C.R.S.1999.

Thus, we conclude that state law indicates that the University serves a state function as an arm of the state.

Contrary to plaintiffs' contention, the *Graham* court rejected the premise that a university's corporate body status precludes it from being considered an arm of the state. Further, the fact that the Regents are subject to state-wide election, rather than appointment by the governor, does not compel a different result. *See Ewing v. Board of Regents of University of Michigan,* 552 F.Supp. 881 (E.D.Mich.1982)(university whose regents were publicly elected officials was still entitled to Eleventh Amendment Immunity).

### B.

Under *Simon* and *Graham,* we next examine the level of autonomy and independence the University enjoys from the control of the state.

Colo. Const. art. VIII, § 5(1) states that: "[T]he establishment, management, and abolition of [the University] is subject to the control of the state." Like UNC, the University is subject to a wide range of control by the Colorado Commission on Higher Education, particularly in areas of program development and funding. Section 23–1–101, et seq., C.R.S.1999.

Although the University is capable of entering into contracts on its own behalf, it must comply with the Colorado Procurement Code for supplies and services. *See* §§ 24–101–105 and 24–101–301(10), C.R.S.1999. University employees are also subject to the State Personnel System and to the Colorado Code of Ethics. *See* §§ 24–50–101(1) and 24–18–102(9), C.R.S.1999.

Thus, despite having broad powers over its day-to-day operations, we conclude that the University has a significant lack of autonomy or independence from the state.

### C.

Finally, under *Simon* we consider how any judgment in this case will ultimately be paid.

The University derives a substantial amount of its funds from annual legislative appropriations. The University's fund exists in the state treasury as a repository for appropriations from the General Assembly, and the state treasurer is authorized to use funds to make certain investments. *See* §§ 23–20–117.5(1) and 23–20–117.5(3), C.R.S. 1999. Monies from the fund are used for the payment of any expense that the University incurs in carrying out its statutory powers and duties. *See* § 23–20–117.5(2), C.R.S. 1999.

■ Unlike UNC, the University is self-insured and is not a part of the state risk management fund which makes it unlikely that a judgment entered against the University will be paid by the state. *See* § 24–30–1510 and § 24–30–1517(2), C.R.S.1999. However, the fact that an entity is self-insured is not definitive in determining status. Indeed, in *Simon,* the Colorado Compensation Insurance Fund was found not to be an arm of the state despite its participation in the risk management fund.

Rather, as noted in *Graham,* it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, that is relevant. As a result, although the possibility that the state treasury will actually pay for any judgment in this case is remote, the ultimate potential for state liability exists.

■ Finally, we recognize that the University is not dependent entirely on the state for funds to respond to suits and that this fact weighs against a determination that it is an arm of the state as does, arguably, the fact that it is authorized to issue bonds. *See Wigger v. McKee,* 809 P.2d 999 (Colo.App. 1990). However, no particular weight need be given to any one factor. Instead, all three factors must be balanced before reaching a conclusion as to the entity's status. *See Graham v. State, supra.*

Weighing the three applicable factors then, we conclude that the balance tips in favor of characterizing the University as an arm of the state and thus not a person for purposes of sovereign immunity.

We find further support for our conclusion from the fact that 10th Circuit cases have consistently treated the University as an arm of the state for Eleventh Amendment purposes. *See Rozek v. Topolnicki,* 865 F.2d 1154 (10th Cir.1989); *see also Morse v. Regents of University of Colorado,* 154 F.3d 1124 (10th Cir.1998).

Accordingly, based upon the foregoing, on remand the court should dismiss the § 1983 against the University insofar as money damages are requested. The validity of the FLSA claims for compensation is addressed in Part III of this opinion.

### II.

To the extent that a claim for injunctive relief under § 1983 and the FLSA is asserted by the plaintiffs against the University, we conclude that this claim must be dismissed as well.

Relying upon footnote 10 in *Will v. Michigan Department of State Police, supra,* a division of this court held in *Bellus v. State,* 843 P.2d 119 (Colo.App.1992), that injunctive

relief could be requested pursuant to § 1983 against a state agency. Another division reached a similar conclusion in *Tepley v. Public Employees Retirement Ass'n*, 955 P.2d 573 (Colo.App.1997).

■ We conclude, however, that a claim for injunctive relief may not be asserted against the state or an arm of the state in state courts under those circumstances. *See also Ellis v. University of Kansas Medical Center*, 163 F.3d 1186 (10th Cir.1998). To the extent *Bellus* and *Tepley* are inconsistent with this conclusion, we decline to follow those decisions.

### III.

■ Under *Alden*, as an arm of the state, the University is liable for FLSA violations only to the extent it has waived its immunity. The Colorado Governmental Immunity Act (CGIA), § 24–10–101, et seq., C.R.S.1999, grants immunity to all public entities for claims of injury that "lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant." *See* § 24–10–106(1), C.R.S. 1999; *City and County of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759 (Colo.1992).

The University contends that the FLSA claims are barred by the CGIA because these claims lie in tort. Hartman concedes the point as to the FLSA retaliation claim. However, relying upon *Colorado Springs v. Conners*, 993 P.2d 1167 (Colo.2000), plaintiffs respond that a claim for overtime pay under FLSA is not a tort claim. We agree with plaintiffs.

■ Motions to dismiss on governmental immunity grounds are treated as motions to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), and plaintiffs have the burden of proving jurisdiction. To the extent findings of fact of the trial court are challenged on appeal, the standard of review is very deferential. However, if the underlying issues of fact are undisputed, then the issue is one of law, and we are not bound by the trial court's determination. *See Trinity Broadcasting of Denver, Inc. v. Westminster*, 848 P.2d 916 (Colo.1993).

In *Conners*, a city employee brought suit against the city under the Colorado Civil Rights Act following the termination of her employment. As pertinent here, she requested reinstatement to her position, back pay, and attorney fees. The complaint was dismissed in response to the city's motion for failure to give notice of the claim under the CGIA.

A division of this court held that the dismissal was error. On certiorari review, our supreme court agreed. The court concluded that an action for reinstatement and back pay under the Act was not an action seeking compensatory damages for personal injury. As a result, the court held that the claim was not a tort claim or one that lies in tort. As a further result, the court determined that the CGIA did not apply.

We view the analysis in *Conners* as dispositive here. Hartman seeks only the amount allegedly due her under the FLSA, and thus, her claim is not for compensatory damages for personal injury. As such, the CGIA does not apply.

### IV.

The individual defendants contend that the trial court erred by failing to dismiss Hartman's FLSA retaliation claims on the basis of sovereign immunity. We disagree.

Similar to the University's motion, we treat the individual defendants' motion to dismiss on sovereign immunity grounds as asserting lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1). Hence, Hartman has the burden of proving jurisdiction. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster, supra*.

### A.

■ The individual defendants first assert that the sovereign immunity of the University, as an arm of the state, extends to them as state officials sued in their official capacity. Plaintiff responds that the individual defendants are not entitled to this immunity because she has sued them in their individual capacities. We agree with plaintiff.

■ Hartman alleges that the individual defendants violated the FLSA retaliation provision. *See* 29 U.S.C. 215(a)(3)(2000). 29 U.S.C. 216 (2000) permits a plaintiff to receive money damages from "any employer" who violates § 215(a)(3). For purposes of FLSA an "employer" is defined as "any person acting directly or indirectly *in the interest of* an employer in relation to an employee." *See* 29 U.S.C. 203(d)(2000)(emphasis supplied). And, persons may be liable under FLSA in an individual capacity while serving as a corporate employer if the individual defendant has control over the terms of the employee's employment. *See Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668 (1st Cir.1998).

The only federal appellate court that has considered the issue in this type of case has concluded that a public official such as the individual defendants may not be sued. *See Welch v. Laney,* 57 F.3d 1004 (11th Cir.1995). However, several federal district courts have come to a different conclusion. *See, e.g., Kilvitis v. County of Luzerne,* 52 F.Supp.2d 403 (M.D.Pa.1999)(judge may be individually liable for FLSA violations despite fact that the Court of Common Pleas was immune from suit under the Eleventh Amendment). In *Kilvitis,* the court based its decision in part on the rationale that if a public officer can be individually liable for violation of § 1983 for official acts committed as a public official, then there is no reason to preclude similar individual liability under FLSA. *See also Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (state officials sued in their individual capacities are "persons" amenable to suit under § 1983). We are persuaded by the rationale of *Kilvitis* and conclude that the individual defendants here do not enjoy any sovereign immunity.

### B.

■ In the alternative, defendants also claim that, even if they are sued as individuals, the state is the real party in interest because the state will indemnify them for any adverse judgments. Accordingly, they claim immunity on this basis. Again, we are not persuaded.

Under § 24–10–110(1)(b)(I), C.R.S.1999, the University, as a public entity, will be liable for:

> [t]he payment of all judgments ... of claims against any of its public employees where the claim ... arises out of injuries sustained from an act or omission of such employee occurring during the performance of his duties and within the scope of his employment, *except where such act or omission is willful and wanton ....* (emphasis supplied)

Here, the University is immune from Hartman's retaliation claims under the CGIA because those claims sound in tort. Thus, the University will not be responsible for any judgments against the individual defendants to the extent those defendants are not afforded the same immunity.

The University will similarly not be responsible for any wanton or willful acts, such as those alleged by Hartman as being malicious and intentional retaliation by these individual defendants. Further, even if the University chooses to indemnify the individual defendants, this indemnification does not necessarily result in the extension of sovereign immunity. *See Griess v. Colorado,* 841 F.2d 1042 (10th Cir.1988). Thus, we conclude that the individual defendants may not claim immunity on the basis that the state will indemnify them.

### C.

■ Finally, contrary to defendants' contention, if, as here, the individual defendants are sued in their individual capacities and are not entitled to immunity, then the notice provisions of § 24–10–109, C.R.S.1999, do not apply to plaintiff's assertion of her FLSA claims. *See Kennedy v. Board of County Commissioners,* 776 P.2d 1159 (Colo.App. 1989). This is because, absent such immunity, CGIA notice requirements cannot operate to preclude Hartman's exercise of a federal right. *See Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Bauman v. Colorado Department of Health,* 857 P.2d 499 (Colo.App.1993).

The order of the trial court is affirmed insofar as it pertains to the retaliation claims

under the FLSA against the individual defendants. The order is also affirmed as to Hartman's non-tort claims against the University. It is reversed in all other respects, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge VOGT and Judge CRISWELL ** concur.