2002-NMSC-009

45 P.3d 876

**Fletcher COCKRELL, Plaintiff–Respondent,**

v.

**The BOARD OF REGENTS OF NEW MEXICO STATE UNIVERSITY and Jim Paul, Defendants–Petitioners.**

No. 26,338.

Supreme Court of New Mexico.

March 27, 2002.

Sandenaw, Carrillo & Piazza, P.C., Thomas A. Sandenaw, Jr., Leonard J. Piazza, Las Cruces, NM, for Petitioners.

Holt & Babington, P.C., Matthew P. Holt, Las Cruces, NM, for Respondent.

## OPINION

SERNA, Chief Justice.

{1} Plaintiff Fletcher Cockrell filed an action in district court against a political subdivision of the State of New Mexico seeking compensation for overtime wages pursuant to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201–219 (1994 & Supp. II 1996). This appeal presents the question whether the State of New Mexico has waived its sovereign immunity from FLSA claims in state court. We hold that the State has not waived sovereign immunity and that Cockrell's FLSA claim must therefore be dismissed.

### I. Procedural Background

{2} Cockrell was employed by New Mexico State University (NMSU) as an assistant men's basketball coach. NMSU terminated his employment in 1997, and Cockrell subsequently filed suit against NMSU's Board of Regents and its former athletic director, Jim Paul. Cockrell alleged that his termination violated his right to due process and sought relief under 42 U.S.C. § 1983 (1994). Cockrell also sought compensation for overtime wages under the FLSA. NMSU filed a motion to dismiss the FLSA claim on the basis

of sovereign immunity.[1] Cockrell then amended his complaint to assert claims of equitable reinstatement under 42 U.S.C. § 1983 and breach of contract, the latter of which sought compensation for overtime wages based on a theory of implied contract. The district court denied the motion to dismiss the FLSA claim in an interlocutory order containing language that enabled NMSU to seek an immediate appeal. *See* NMSA 1978, § 39–3–4(A) (1971, prior to 1999 amendment). The district court did not address the breach of contract claim in its ruling, and this claim was not the subject of NMSU's subsequent appeal.

{3} The Court of Appeals accepted NMSU's application for interlocutory appeal. *See* Rule 12–203 NMRA 2002. In a memorandum opinion, the Court of Appeals affirmed the denial of the motion to dismiss. Relying on its opinion in *Whittington v. State Department of Public Safety,* 1998 NMCA 156, ¶¶ 11–16, 126 N.M. 21, 966 P.2d 188, *vacated,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999), which involved identical issues, the Court of Appeals concluded that neither sovereign immunity nor the Eleventh Amendment to the United States Constitution prevented Cockrell from pursuing an FLSA claim in state court. Following this Court's denial of NMSU's request for discretionary review, the United States Supreme Court granted Cockrell's petition for writ of certiorari to the Court of Appeals. *Bd. of Regents of N.M. State Univ. v. Cockrell,* 527 U.S. 1032, 119 S.Ct. 2389, 144 L.Ed.2d 791 (1999). As in *Whittington,* the Supreme Court vacated the judgment of the Court of Appeals and remanded for further consideration in light of *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). *Cockrell,* 527 U.S. at 1032, 119 S.Ct. 2389.

## II. The Supreme Court's Opinion in *Alden v. Maine*

{4} In *Alden,* a group of Maine probation officers filed FLSA claims for overtime wages and liquidated damages in state court. 527 U.S. at 711–12, 119 S.Ct. 2240. The Supreme Court reviewed the determination by the courts of Maine that these FLSA claims were barred by sovereign immunity. *Id.* More specifically, the Court addressed whether Congress has the power under Article I of the United States Constitution to subject nonconsenting states to private suits for damages in state court. *Id.* In order to put the Supreme Court's analysis of this issue in its proper context, it is necessary to review two earlier opinions from the Court.

{5} In *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 555–56, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Court held that Congress has the power under the Commerce Clause of Article I, Section 8 of the United States Constitution to enforce the substantive requirements of the FLSA against the States. In reaching this conclusion, the Court overruled its earlier pronouncement in *National League of Cities v. Usery,* 426 U.S. 833, 852, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), that Congress could not, under the guise of the Commerce Clause, interfere with a state's ability to structure employment relationships between the state and its employees "in areas of traditional governmental functions." The Court in *Garcia* determined that the "traditional governmental function" test of *National League of Cities* "is not only unworkable but is also inconsistent with established principles of federalism." *Garcia,* 469 U.S. at 531, 105 S.Ct. 1005. In place of the "traditional governmental function" test, the Court explained that the appropriate focus for a federalism inquiry in this context should be the express authorization of congressional power in the text of the Constitution. *Id.* at 549, 105 S.Ct. 1005. Though the States retain significant sovereignty in the federalist system, "[t]hey do so ... only to the extent that the Constitution has not divested them of their original

---

1. NMSU also moved to dismiss the Section 1983 claim. Cockrell voluntarily dismissed this claim against NMSU, but the district court denied the motion to dismiss the Section 1983 claim against Paul, finding that Paul was not protected by qualified immunity. Paul sought immediate review of the district court's ruling by writ of error, and the Court of Appeals reversed the district court on the question of qualified immunity. *Cockrell v. Bd. of Regents of N.M. State Univ.,* 1999–NMCA–073, 127 N.M. 478, 983 P.2d 427. This ruling by the Court of Appeals is not before this Court.

powers and transferred those powers to the Federal Government." *Id.* If the Constitution authorizes Congress to act, such as through the Commerce Clause, then the States are protected from congressional overreaching not by their inherent sovereignty but by the "structure of the Federal Government itself," *id.* at 550, and the States' significant role in "the federal political process." *Id.* at 552. The Court determined that "nothing in the overtime and minimum-wage requirements of the FLSA ... is destructive of state sovereignty or violative of any constitutional provision." *Id.* at 554. Because "the protections of the wage and hour provisions of the FLSA contravened no affirmative limit on Congress' power under the Commerce Clause," the Court upheld the application of the substantive provisions of the FLSA to the States. *Id.* at 555–56. As a valid exercise of Congress's constitutional power under Article I, Section 8, the substantive provisions of the FLSA are binding on the States pursuant to the Supremacy Clause of Article VI of the Constitution.

{6} In *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court addressed a related issue of federalism: whether Congress has the power to abrogate the States' sovereign immunity from suit by providing a private remedy in federal court for a state's violation of a federal statute. The Court held that "the background principle of state sovereign immunity embodied in the Eleventh Amendment" precludes Congress from authorizing suits in federal court by private parties against a nonconsenting state, *id.* at 72, 116 S.Ct. 1114, unless Congress acts pursuant to its powers under Section 5 of the Fourteenth Amendment, which "operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." *Id.* at 65–66, 116 S.Ct. 1114. "The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Id.* at 72–73, 116 S.Ct. 1114.

{7} As a logical progression, the Court addressed in *Alden* the inevitable question growing out of its opinions in *Garcia* and *Seminole Tribe:* given Congress's power to apply the substantive provisions of the FLSA against the States under *Garcia* but the Eleventh Amendment's restriction on private remedies against nonconsenting states in federal court under *Seminole Tribe,* does Congress have the power to provide for the enforcement of the private remedies in the FLSA against a state in the state's own courts without its consent? Specifically, the Court addressed the constitutionality of 29 U.S.C. § 216(b), which allows state employees to pursue an action against their employer in a "State court of competent jurisdiction" for damages "in the amount of ... [the employees'] unpaid overtime compensation ... and in an additional equal amount as liquidated damages," as well as reasonable attorney's fees and costs. The Court held in *Alden* "that the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation." *Alden,* 527 U.S. at 754, 119 S.Ct. 2240. The Court, however, did not rely directly on the Eleventh Amendment, as in *Seminole Tribe,* or on a specific limitation on Congress's power in the Constitution, as outlined in *Garcia. See Alden,* 527 U.S. at 728, 119 S.Ct. 2240 (discussing the "settled doctrinal understanding, consistent with the views of the leading advocates of the Constitution's ratification, that sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself"). Instead, the Court relied on "the States' immunity from suit [as] a fundamental aspect of [their] sovereignty." *Alden,* 527 U.S. at 713, 119 S.Ct. 2240. Thus, despite the Court's earlier admonition in *Garcia* that "the fundamental limitation that the constitutional scheme imposes on the Commerce Clause to protect the 'States as States' is one of process rather than one of result," *Garcia,* 469 U.S. at 554, 105 S.Ct. 1005, and its disbelief "that courts ultimately can identify principled constitutional limitations on the scope of Congress' Commerce Clause powers over the States merely by relying on *a priori* definitions of state sovereignty," *id.* at 548, 105 S.Ct. 1005, the Court returned to an analysis of the "fundamental attributes of state sovereign-

ty," *id.* at 556, 105 S.Ct. 1005, in order to review the availability of the FLSA's private remedies in state courts. *See Alden,* 527 U.S. at 729, 119 S.Ct. 2240 ("[T]he scope of the States' immunity from suit is demarcated not by the text of the [Eleventh] Amendment alone but by fundamental postulates implicit in the constitutional design.").

{8} The Court in *Alden* determined that state sovereign immunity "inheres in the system of federalism established by the Constitution." 527 U.S. at 730, 119 S.Ct. 2240. In reaching this conclusion, the Court relied on four aspects of constitutional interpretation: (1) original understanding of the Constitution; (2) early congressional practice; (3) Supreme Court precedent; and (4) the structure of the Constitution. *Id.* at 741–54, 119 S.Ct. 2240. Relying heavily on the structure of the document itself, the Court noted that "our federalism requires that Congress treat the States in a manner consistent with their status as residuary sovereigns and joint participants in the governance of the Nation." *Id.* at 748, 119 S.Ct. 2240. "The principle of sovereign immunity preserved by constitutional design thus accords the States the respect owed them as members of the federation." *Id.* at 748–49, 119 S.Ct. 2240 (internal quotation marks and quoted authority omitted).

> A power to press a State's own courts into federal service to coerce the other branches of the State ... is the power first to turn the State against itself and ultimately to commandeer the entire political machinery of the State against its will and at the behest of individuals. Such plenary federal control of state governmental processes denigrates the separate sovereignty of the States.

*Id.* at 749, 119 S.Ct. 2240 (citation omitted). Based on these principles, the Court determined that the remedial provisions of the FLSA cannot be enforced against a state in the state's courts without its consent. The Court further determined that the State of Maine had not waived its sovereign immunity from suit and therefore affirmed the dismissal of the FLSA claims. *Id.* at 758, 760, 119 S.Ct. 2240. It is within this context that the Supreme Court remanded the present case

to the Court of Appeals for further consideration.

## III. The Court of Appeals' Disposition on Remand from the Supreme Court

{9} On remand from the Supreme Court, the Court of Appeals addressed whether the State had waived its sovereign immunity from suit under the FLSA. The Court determined, based on this Court's opinion in *Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo,* 114 N.M. 695, 699, 845 P.2d 789, 793 (1992), that an FLSA claim sounds in contract and that "any consent to Plaintiff's FLSA claim must be inferred from [the] waiver of sovereign immunity [in NMSA 1978, § 37–1–23(A) (1976)] for 'actions based on a valid written contract.'" *Cockrell v. Bd. of Regents of N.M. State Univ.,* No. 19,346, slip op. at 3 (N.M.Ct.App. Apr. 28, 2000). The Court of Appeals remanded the matter for the district court to determine whether Cockrell's complaint alleged a valid written contract within the meaning of Section 37–1–23(A). "If Plaintiff establishes a contract within Section 37–1–23(A)'s waiver of immunity and that the contract incorporates the FLSA, then Plaintiff may assert FLSA claims arising out of that contract." *Cockrell,* slip op. at 4. NMSU then petitioned this Court to review the Court of Appeals' determination that Cockrell could pursue an FLSA claim if the provisions of the FLSA were incorporated, either by express or implied-in-fact agreement or by operation of law, into a valid written contract with NMSU. In the context of NMSU's petition, it is significant that the Court of Appeals, evaluating this identical issue, reached a different conclusion on remand from the Supreme Court in its published opinion in *Whittington v. State Department of Public Safety,* 2000–NMCA–055, 129 N.M. 221, 4 P.3d 668, *cert. granted,* 129 N.M. 250, 4 P.3d 1241, (2000). In that case, the Court of Appeals affirmed the district court's dismissal of the plaintiffs' direct FLSA claims on the basis of sovereign immunity. *Id.* ¶ 5. Unlike the mandate in NMSU's interlocutory appeal in the present case, under which Cockrell could have pursued a direct FLSA claim if he was able to demonstrate an

implied contract, the Court of Appeals did not remand the FLSA claims in *Whittington.* *See id.* The Court, instead, merely noted that the dismissal of the FLSA claims did not control the resolution of the plaintiffs' separate contract claim that was not a part of the plaintiffs' appeal. *Id.* The plaintiffs in *Whittington* then petitioned this Court for review of the Court of Appeals' dismissal of the FLSA claims. This Court granted NMSU's petition for writ of certiorari in this case in order to review the Court of Appeals' analysis of sovereign immunity in the wake of *Alden.* We also granted the petitions in both this case and *Whittington* in order to resolve the inconsistent holdings from the Court of Appeals in these two cases.

## IV. The Effect of *Hicks v. State* on Sovereign Immunity

{10} In *Hicks v. State,* 88 N.M. 588, 590–92, 544 P.2d 1153, 1155–57 (1975), this Court abolished common law sovereign immunity. Cockrell relies on *Hicks* for two related arguments in the present case. First, Cockrell contends that *Alden* was based on common law sovereign immunity and that, "[b]ecause the doctrine of common law sovereign immunity has been abolished in New Mexico, *Alden* has no application in claims against the State of New Mexico." *But see Hydro Conduit Corp. v. Kemble,* 110 N.M. 173, 178 n. 2, 793 P.2d 855, 860 n. 2 (1990) ("[T]he common law now recognizes a constitutionally valid statutory imposition of sovereign immunity, and such immunity must be honored by the courts where the legislature has so mandated."). Alternatively, Cockrell relies on this Court's characterization of *Hicks* as "generally abolish[ing] the common law doctrine of sovereign immunity in all its ramifications, whether in tort or contract or otherwise, except as implemented by statute or as might otherwise be interposed by judicial decision for sound policy reasons." *Torrance County Mental Health Program, Inc. v. N.M. Health & Evr't Dep't,* 113 N.M. 593, 597, 830 P.2d 145, 149 (1992). Based on this language, Cockrell argues that the State has waived immunity under *Hicks* because the Legislature has not enacted a statute reestablishing sovereign immunity as it pertains to federal statutory claims in general and

FLSA claims in particular. Cockrell contends that the legislative response to *Hicks* through Section 37–1–23, which provides that the State is immune from contract actions that are not based on a valid written contract, and the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (1976, as amended through 2001), which provides "immunity for liability for any tort" except as otherwise waived, NMSA 1978, § 41–4–4(A) (2001), reestablished only a narrow immunity for the State that does not extend to FLSA claims. We believe both of these arguments are answered by the Supreme Court's opinion in *Alden.*

{11} Contrary to Cockrell's assertion, the Supreme Court did not rest its opinion in *Alden* on common law sovereign immunity. "Although the sovereign immunity of the States derives at least in part from the common-law tradition, the structure and history of the Constitution make clear that the immunity exists today by constitutional design." *Alden,* 527 U.S. at 733, 119 S.Ct. 2240. Within the specific realm of federalism, the judicially created doctrine of sovereign immunity was transformed into a constitutional principle by the ratification of the United States Constitution. Thus, in the limited context of a private action for money damages authorized by a federal statute, "the States do retain a *constitutional immunity from suit in their own courts.*" *Id.* at 745, 119 S.Ct. 2240 (emphasis added).

{12} In *Hicks,* this Court recognized that "the doctrine of sovereign immunity is one of common law, judicially created." 88 N.M. at 589, 544 P.2d at 1154. Because we addressed only the State's liability for damages in a common law tort action, we determined that "sovereign immunity has always been a judicial creation without statutory codification and, therefore, can also be put to rest by the judiciary." *Id.* at 590, 544 P.2d at 1155. We had no need to address the statutory sovereign immunity that did not yet exist, nor could we have foreseen the constitutional significance attributed to sovereign immunity in the limited context of federalism by the Supreme Court in *Alden.* Our abrogation of sovereign immunity in *Hicks* was therefore limited to common law sovereign immunity

from common law causes of action. For the simple reason that constitutional sovereign immunity was beyond the scope of the issue presented in *Hicks,* our holding in that case cannot be characterized as inconsistent with *Alden's* recognition of a constitutional sovereign immunity or as effectuating a waiver of constitutional sovereign immunity. *See Torrance County,* 113 N.M. at 597, 830 P.2d at 149 ("[W]e cannot agree ... that *Hicks's* sweeping abolition of sovereign immunity carried away all defenses of governmental entities, based on their role as state-created entities, regardless of the nature of the claims asserted or the relief sought.").

{13} Indeed, being presented with this issue for the first time, we do not believe that it is within this Court's province to decide whether the State should subject itself to liability for a federal claim filed in state court. Under the principle of separation of powers embodied in Article III, Section 1 of the New Mexico Constitution, we believe this is a matter for the Legislature. Unlike the decision "to do away with common law principles," *Hicks,* 88 N.M. at 590, 544 P.2d at 1155, which is within this Court's power, the decision to waive this State's constitutional sovereign immunity would represent an alteration of the constitutional balance of power between the Federal Government and the State of New Mexico that was struck by the Supreme Court in *Alden.* In addition, this decision involves "the allocation of scarce resources among competing needs and interests [that] lies at the heart of the political process." *Alden,* 527 U.S. at 751, 119 S.Ct. 2240. "If the principle of representative government is to be preserved to the States, the balance between competing interests must be reached after deliberation by the political process established by the citizens of the State...." *Id.* The question in this circumstance is not the continued legitimacy of a court-made rule; it is instead the public policy in New Mexico of the proper relationship between the federal and state governments. We believe that a policy decision of this magnitude, going to New Mexico's "most fundamental political processes," *id.,* is particularly unsuited for judicial resolution as a matter of state constitutional law. As we have recognized, "it is the particular domain of the legislature, as the voice of the people, to make public policy." *Torres v. State,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995) (noting that "[t]he judiciary ... is not as directly and politically responsible to the people as are the legislative and executive branches of government"). Thus, in order to refrain from unduly encroaching on a core function of the legislative branch of government under Article III, Section 1, *see State ex rel. Taylor v. Johnson,* 1998–NMSC–015, ¶ 23, 125 N.M. 343, 961 P.2d 768, we conclude that it is within the sole province of the Legislature to waive the State's constitutional sovereign immunity. *See Alden,* 527 U.S. at 752, 119 S.Ct. 2240 ("A State is entitled to order the processes of its own governance, assigning to the political branches, rather than the courts, the responsibility for directing the payment of debts. If Congress could displace a State's allocation of governmental power and responsibility, the judicial branch of the State, whose legitimacy derives from fidelity to the law, would be compelled to assume a role not only foreign to its experience but beyond its competence as defined by the very Constitution from which its existence derives.") (citation omitted).

{14} Based on his argument that *Alden* has no application in New Mexico, Cockrell also argues that *Hicks'* abolition of common law sovereign immunity, when combined with the principle of federal supremacy, precludes the Legislature from asserting sovereign immunity. Cockrell contends that the Legislature cannot enact a statutory immunity that is inconsistent with federal law and that Congress's application of the remedial provisions of the FLSA, in 29 U.S.C. § 216(b), against the State as an employer is binding on New Mexico through the Supremacy Clause. We reject this argument based on the foregoing analysis of *Alden* and *Hicks.* We also reject Cockrell's reliance on federal supremacy. Under Article VI of the United States Constitution, as well as Article II, Section 1 of the New Mexico Constitution, the federal Constitution and federal laws are the "supreme Law of the Land." However, in order to be supreme, a federal law must be "made in Pursuance" of the United States Constitution. U.S. Const. art. VI. As the

Supreme Court recognized in *Alden*, "the Supremacy Clause enshrines as 'the supreme Law of the Land' only those Federal Acts that accord with the constitutional design." 527 U.S. at 731, 119 S.Ct. 2240. Similarly, the state supremacy clause cannot confer on Congress the authority to exercise a power that is withheld by the United States Constitution. Congress's authority stems from the United States Constitution, not from the New Mexico Constitution. "We reject any contention that substantive federal law by its own force necessarily overrides the sovereign immunity of the States. When a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States." *Alden*, 527 U.S. at 732, 119 S.Ct. 2240. Because "Congress' powers under Article I of the Constitution do not include the power to subject States to suit at the hands of private individuals," *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the private remedial provisions of the FLSA as applied against the States are constitutionally invalid and of no force and effect unless and until a state waives its constitutional sovereign immunity.[2]

**■** {15} We determine that *Hicks* does not render *Alden* inapplicable in New Mexico. The constitutional sovereign immunity created by the United States Constitution survived our opinion in *Hicks*, and therefore, the Legislature need not have enacted a statute to reestablish this immunity. *But see Hartman v. Regents of Univ. of Colo.*, 22 P.3d 524, 529 (Colo.Ct.App.2000) (cert. granted Apr. 23, 2001) (concluding that an FLSA claim did not lie in tort and that the state legislature had created statutory immunity only for tort actions). This State, by virtue of its sovereign role in the Union, is constitutionally immune from private suits for damages under a federal statute. If the State is to consent to Congress's encroachment on this vital aspect of federalism, it must be a decision of the Legislature. Thus, we now consider Cockrell's argument that the Legis-

lature has waived the constitutional sovereign immunity recognized by *Alden*.

## V.  The Waiver of Sovereign Immunity in Section 37–1–23

**■** {16} Cockrell contends that Section 37–1–23, which waives immunity from "actions based on a valid written contract," waives the State's immunity from FLSA claims. To support his claim, Cockrell relies on this Court's opinion in *Bernalillo County*, which the Court of Appeals interpreted as holding that an FLSA claim sounds "only in contract." *Bernalillo County*, 114 N.M. at 699, 845 P.2d at 793. Based on this interpretation of *Bernalillo County*, Cockrell contends that an FLSA claim falls within the parameters of Section 37–1–23 and that sovereign immunity is waived as long as there is a valid written contract of employment. *See Archer v. Rockingham County*, 144 N.C.App. 550, 548 S.E.2d 788, 792–93 (2001), *review denied*, 355 N.C. 210, 559 S.E.2d 796 (2002); *see also West v. State ex rel. State Superintendent of Pub. Educ.*, 324 So.2d 579, 581 (La.Ct.App.1975); *Allen v. Fauver*, 167 N.J. 69, 768 A.2d 1055, 1061–62 (2001) (Long, J., concurring in part, dissenting in part); *cf. King v. State*, 260 Neb. 14, 614 N.W.2d 341, 348 (2000) (per curiam) (concluding that the statutory waiver of immunity for claims based on contract "does not waive the State's sovereign immunity from a suit brought against it for alleged FLSA violations when the FLSA claims are not founded upon or growing out of the contracts themselves"). The Court of Appeals held that Cockrell could assert his FLSA claim based on a waiver of immunity under Section 37–1–23 if he established a valid written contract incorporating the FLSA. We disagree.

{17} Initially, we believe that the Court of Appeals misconstrued our opinion in *Bernalillo County*. In that case, we addressed an issue of insurance coverage and an insurance company's duty to defend and indemnify. *Bernalillo County*, 114 N.M. at 697, 845 P.2d at 791. In order to resolve this issue, we analyzed "whether the injured party's com-

---

**2.** Moreover, we disagree with the implication in Cockrell's argument that a waiver of the State's constitutional sovereign immunity would be irre-

vocable. We believe this argument is inconsistent with the Supreme Court's interpretation of constitutional sovereign immunity in *Alden*.

plaint states facts that bring the case within the coverage of the policy." *Id.* The injured party's complaint contained three counts, the first of which alleged a violation of the FLSA and the second two of which alleged breach of contract. *Id.* at 698–99, 845 P.2d at 792–93. We addressed each count separately. *Id.* The discussion referenced by the Court of Appeals concerned one of the breach of contract counts, not the count directly alleging a violation of the FLSA. *Id.* In the context of the contract claim, we determined that the breach of the contractual duty to pay overtime wages did not give rise to an independent action in tort. *Id.* at 699, 845 P.2d at 793. Although we stated that "[e]ven the violation of the FLSA evolves from the contract of employment," this observation was made in the specific context of a breach of contract claim, not a claim for damages directly under the FLSA. *Id.* As a result, we do not believe that our conclusion in *Bernalillo County* that this specific count of the complaint was "properly viewed as existing only in contract," *id.*, provides guidance on the question presented in this case.

{18} We determine that Cockrell's direct FLSA claim is not one based on contract. Cockrell's direct FLSA claim is statutory, not contractual. The FLSA claim is based on NMSU's alleged failure to comply with the substantive requirements of the FLSA as mandated by Congress, and Cockrell seeks the damages provided in 29 U.S.C. § 216(b), including liquidated damages and attorney's fees. Addressing a nearly identical argument, the Supreme Court of New Jersey recognized that "recharacterization of the claim cannot change the essential nature of the claim. Plaintiffs' complaint alleges a violation of the federal FLSA and seeks damages pursuant to rights created by that federal statute. We can see no reasonable conclusion other than that plaintiffs' claim is a statutory claim." *Allen*, 768 A.2d at 1059 (citations omitted). In fact, Cockrell amended his complaint to allege a separate breach of contract claim based on NMSU's failure to pay overtime wages. Because the FLSA claim is purely statutory, we reject the characterization of it as one "based on a valid written contract" within the meaning of Section 37–1–23. Thus, Section 37–1–23 does

not provide an express waiver of immunity for the FLSA claim.

{19} Cockrell appears to contend in the alternative that Section 37–1–23 implicitly evidences a legislative intent to waive immunity from FLSA claims. *See Anthony v. State*, 632 N.W.2d 897, 902 (Iowa 2001) ("We are convinced that the statutory scheme for deriving pay plans has been implemented in a manner that includes FLSA overtime remuneration as compensation owed by an employer."). We are not persuaded.

■ {20} We have been reluctant to infer a waiver of sovereign immunity, even outside the context of constitutional sovereign immunity. In *Torrance County*, for example, we concluded that "our legislature's silence on punitive damages in Section 37–1–23 cannot be read as expressing an intention to waive immunity for punitive damages in contract actions." 113 N.M. at 598, 830 P.2d at 150. Similarly, the Supreme Court has indicated that in order to find a waiver of a state's constitutional sovereign immunity "the State's consent [must] be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "Our reluctance to infer that a State's immunity from suit ... has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system." *Id.*

> Constructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here. In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, [29 S.Ct. 458, 53 L.Ed. 742] (1909).

*Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (alteration in original). Because the waiver in this case involves the State's constitutional right to sovereign immunity, "a right that goes to the essence of federalism," *Allen*, 768 A.2d at

1060, we require a clear and unambiguous expression of legislative intent to consent to suit for FLSA claims.

{21} In response to a similar argument that the legislative waiver of immunity for contract claims evidences an intent to waive immunity for FLSA claims, the Supreme Court of Virginia stated,

> This proposition ignores the basis underpinning the Commonwealth's assertion of sovereign immunity in this case.
>
> As the Commonwealth notes, the plea in bar was advanced in order to exercise the Commonwealth's prerogative not to be subject to suit in her own courts pursuant to an act of Congress. *The issue is not one of the avoidance of a just contract debt, but of the preservation of a right reserved to the states by the United States Constitution.* We see no reason to vitiate that right by a broad and unwarranted interpretation of the legislative intent behind the limited waiver of sovereign immunity [for contract debts], and nothing in our cases interpreting that statute suggests that it should be applied in circumstances other than in claims properly instituted under that statute and the scheme provided for pursuing such claims....

*Commonwealth v. Luzik,* 259 Va. 198, 524 S.E.2d 871, 877 (2000) (emphasis added). We agree. We believe that the purposes behind the creation of immunity and the limited waiver of immunity in Section 37–1–23 do not support an inference of an intent to waive this State's constitutional sovereign immunity.

{22} We have recognized that the purpose of the legislative enactment containing Section 37–1–23 "was to reinstate the sovereign immunity which had been abolished by *Hicks v. State,* subject to certain exceptions." *Hydro Conduit,* 110 N.M. at 177, 793 P.2d at 859. The limited waiver of immunity for valid written contracts "encourag[es] parties who contract with governmental entities to do so in writing" in order to facilitate clarity in contractual terms and obligations and to ensure that the "governmental entity is authorized to enter into [the] contract." *Garcia v. Middle Rio Grande Conservancy Dist.,* 1996–NMSC–029, ¶¶ 16–17, 121 N.M. 728,

918 P.2d 7. The State's constitutional sovereign immunity involves entirely different considerations than contract enforcement and proof of contractual terms. It involves "the proper balance between the supremacy of federal law and the separate sovereignty of the States." *Alden,* 527 U.S. at 757, 119 S.Ct. 2240. We believe it would be contrary to the purposes of Section 37–1–23 to infer a waiver of an immunity that not only survived our opinion in *Hicks* but goes to the very heart of federalism. Thus, we conclude that Section 37–1–23 does not waive the State's constitutional sovereign immunity.

{23} Because the Legislature has not waived the State's constitutional sovereign immunity, NMSU could not do so on its own in a contract of employment. *See Connelly v. State,* 26 P.3d 1246, 1259 (Kan. 2001) ("The consent to suit or waiver of sovereign immunity must be based on State action which we deem to be legislative enactments expressing the will of elected officials and cannot be based on acts of agents."), *cert. denied,* — U.S. —, 122 S.Ct. 813, 151 L.Ed.2d 698 (2002). Thus, although Cockrell contends that NMSU agreed to be bound by the provisions of the FLSA by incorporating the federal act into a personnel manual, NMSU did not have the authority to waive the State's constitutional sovereign immunity. As indicated above, that power is reserved to the Legislature. Moreover, we disagree with the Court of Appeals' determination that the incorporation of the provisions of the FLSA into an employment contract by operation of law would entitle Cockrell to invoke the remedial provisions of the FLSA in state court. It is true that "[t]he FLSA provisions are read into and become a part of every employment contract that is subject to the terms of the Act." *Bernalillo County,* 114 N.M. at 699, 845 P.2d at 793 (internal quotation marks and quoted authority omitted). "A contract incorporates the relevant law, whether or not it is referred to in the agreement." *State ex rel. Udall v. Colonial Penn Ins. Co.,* 112 N.M. 123, 130, 812 P.2d 777, 784 (1991). However, as we have described above, the Supreme Court has held that Congress is without authority under Article I of the federal Consti-

tution to subject a nonconsenting state to private remedies in the state's own court for the violation of a federal statute. Because we conclude that the State of New Mexico has not consented to FLSA claims by state employees, 29 U.S.C. § 216(b) does not have the force of law as applied against the State and therefore cannot be incorporated into a state employment contract by operation of law. It would indeed be circular logic to allow a contract, by legal implication, to accomplish what the law otherwise prohibits. Thus, to the extent that NMSU might have had a contract with Cockrell incorporating the FLSA by operation of law, it would incorporate only those constitutionally valid substantive provisions of the federal act by which the State is bound under *Garcia*; it would not incorporate the remedial provisions that are beyond the scope of Congress's constitutional powers to enforce against the State under *Alden*.

{24} We conclude that any waiver of the State's constitutional sovereign immunity must be clear and unambiguous. *See generally Dick v. Merillat*, 139 Ohio App.3d 716, 745 N.E.2d 507, 510 (2000) (discussing a statute that expressly exempts from immunity "civil claims based upon alleged violations of the constitution or statutes of the United States"). We also conclude that the Legislature has not enacted a clear waiver of immunity from FLSA claims. In fact, we believe it is noteworthy that the Legislature has expressly provided that the provisions of the Minimum Wage Act, NMSA 1978, §§ 50–4–19 to –30 (1955, as amended through 1999), New Mexico's analog to the FLSA, shall not apply to "the state or any political subdivision thereof." NMSA 1978, § 50–4–21(B) (1983). For these reasons, we hold that Cockrell's FLSA claims must be dismissed on the basis of NMSU's constitutional immunity from suit.

## VI. Independent Contract Actions

█ {25} Although we conclude that the State has not waived sovereign immunity with respect to Cockrell's federal claims under the FLSA, we do not intend to dispose of Cockrell's separate cause of action for breach of contract under state law. In his amended complaint, Cockrell alleged that NMSU entered into a valid written contract with him for the payment of overtime wages by providing in a personnel manual that NMSU would comply with the terms of the FLSA. While we conclude that NMSU does not have authority to waive the State's constitutional sovereign immunity and to agree to be bound by the remedial provisions of the FLSA under 29 U.S.C. § 216(b), we do not mean to dispose of the question whether NMSU had the authority to enter into an employment contract with Cockrell and to determine the appropriate terms of compensation under that employment contract, including compensation for overtime wages, thereby possibly subjecting NMSU to a contract claim, and potential contract damages, rather than a direct FLSA claim.

█ {26} The waiver of sovereign immunity in Section 37–1–23 extends to the written terms of a personnel manual if the manual constitutes an implied-in-fact contract. *Garcia*, 1996–NMSC–029, ¶¶ 14–15, 121 N.M. 728, 918 P.2d 7. "Under New Mexico law, a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined." *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989). However, " '[e]mployers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract....' " *Lukoski v. Sandia Indian Mgmt. Co.*, 106 N.M. 664, 666, 748 P.2d 507, 509 (1988) (quoting *Leikvold v. Valley View Cmty. Hosp.*, 141 Ariz. 544, 688 P.2d 170, 174 (1984)). NMSU argues on appeal that its personnel manual could not have supported a reasonable expectation of conformity by NMSU with the terms of the manual. NMSU highlights that the manual expressly states that its provisions are merely general statements of policy and procedure, are not contractual commitments, and are subject to unilateral alteration by NMSU with or without notice to employees. *See Lukoski*, 106 N.M. at 666, 748 P.2d at 509 ("[T]he language of the handbook does nothing to alert an employee against placing reliance on any statement

contained therein or against viewing such discipline and termination policy as only a unilateral expression of [the employer's] intention that is subject to revocation or change at any time, in any manner, at the pleasure of [the employer]."). Nevertheless, because the district court did not reach Cockrell's breach of contract claim in its order of dismissal, we believe this issue is more appropriately resolved by the district court on remand. "[W]hether an employee handbook has modified the employment relationship is a question of fact to be discerned from the totality of the parties' statements and actions regarding the employment relationship." *Newberry*, 108 N.M. at 427, 773 P.2d at 1234.

## VII. Policy Considerations

{27} Although we hold the State has not waived its constitutional sovereign immunity from direct FLSA claims, we emphasize that the State is bound by the substantive provisions of the FLSA and is not free to disregard its obligations under federal law. Our holding in this case is certainly not intended to "legitimiz[e] political defiance of valid federal law." *Alden*, 527 U.S. at 803 n. 36, 119 S.Ct. 2240 (Souter, J., dissenting). We recognize the incongruity of the State's obligation to pay overtime wages in accordance with the FLSA without a concomitant method of enforcement for employees. After all, the FLSA is intended "to protect certain groups of the population from sub-standard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce ... due to the unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (footnote omitted). Considering that this statutory scheme is designed "to aid the unprotected," *id.* at 707 n. 18, 65 S.Ct. 895, it seems questionable to rely largely on "[t]he good faith of the States" for enforcement, *Alden*, 527 U.S. at 755, 119 S.Ct. 2240. The seemingly inconsistent positions taken by the Supreme Court in *Garcia* as compared to *Alden* and *Seminole Tribe* appears to have resulted in a right without a remedy, or at least without the complete and direct remedy that was intended by Congress. *See Alden*, 527 U.S. at 811–14, 119 S.Ct. 2240 (Souter, J., dissenting).

The inherent unfairness of this dichotomy is not lost on this Court. It could be that this unfairness is more a byproduct of the *Alden* majority's growing discomfort with the reach of federal power under *Garcia*, and the resulting interference on the States' self-governance, than it is a reflection of the importance of sovereign immunity as a matter of constitutional design and the underlying dignity of the States. *See Alden*, 527 U.S. at 750–51, 119 S.Ct. 2240 ("A general federal power to authorize private suits for money damages would place unwarranted strain on the States' ability to govern in accordance with the will of their citizens."); *id.* at 751, 119 S.Ct. 2240 ("When the Federal Government asserts authority over a State's most fundamental political processes, it strikes at the heart of the political accountability so essential to our liberty and republican form of government."); *see also United States v. Morrison*, 529 U.S. 598, 616, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) ("[T]he limitation of congressional authority is not solely a matter of legislative grace."); *Garcia*, 469 U.S. at 580, 105 S.Ct. 1005 (Rehnquist, J., dissenting) (discussing the general approach to federalism adopted in *National League of Cities* as "a principle that will, I am confident, in time again command the support of a majority of this Court"). Nevertheless, we are bound by the United States Supreme Court's interpretation of the United States Constitution, and we must endeavor to refrain from unduly encroaching on the functions of the legislative branch of this State.

{28} Despite the existence of the State's constitutional sovereign immunity, state employees who do not receive the benefits to which they are entitled under the FLSA are not without recourse. In addition to a possible independent state action as discussed above, employees are protected by the official enforcement provision of the FLSA, *see* 29 U.S.C. § 216(c); *Alden*, 527 U.S. at 759–60, 119 S.Ct. 2240, and constitutional sovereign immunity "does not bar certain actions against state officers for injunctive or declaratory relief," *Alden*, 527 U.S. at 757, 119 S.Ct. 2240. However, as illustrated in this case by the limiting language in NMSU's personnel manual, we recognize that these potential alternative remedies might still fall short of assuring that the

purposes of the FLSA are effectuated. To this end, we encourage the Legislature to consider responding to the void that has been created by the Supreme Court's opinion in *Alden.* The purpose of the FLSA's overtime requirements "is to provide a financial disincentive upon using employees beyond the work period deemed appropriate by Congress." *Nat'l League of Cities,* 426 U.S. at 849, 96 S.Ct. 2465. This purpose is consistent with the constitutional policy of this State that "[e]ight hours shall constitute a day's work in all cases of employment by and on behalf of the state or any county or municipality thereof." N.M. Const. art. XX, § 19. The Legislature has thus far not enacted the necessary enabling legislation for enforcement of this provision, and this provision does not, on its own, entitle state employees to overtime wages. *Jaramillo v. City of Albuquerque,* 64 N.M. 427, 430, 329 P.2d 626, 628 (1958) ("[W]e conclude that Article 20, Section 19 of our Constitution is not self-executing but is a declaration of principle or policy as to the number of hours employees of the class named should work to be entitled to a day's wages."); *accord Weston v. Mont. State Highway Comm'n,* 186 Mont. 46, 606 P.2d 150, 152–53 (1980); *State v. Boykin,* 109 Ariz. 289, 508 P.2d 1151, 1154 (1973) (in banc). Nonetheless, a waiver of the State's constitutional immunity from FLSA claims would be consistent with the constitutional principle articulated in Article XX, Section 19, and would ensure that state employees receive the protection from excessive work hours to which they are entitled under federal law. *See Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942) (stating that the liquidated damages in 29 U.S.C. § 216(b) "are compensation, not a penalty or punishment by the Government"). We note that the Legislature would be free to respond to *Alden* with only a limited waiver of constitutional immunity. *See Raygor v. Regents of Univ. of Minn.,* 534 U.S. 533, 122 S.Ct. 999, 1006, 152 L.Ed.2d 27 (2002) ("[W]ith respect to suits against a state sovereign in its own courts, we have explained that a State 'may prescribe the terms and conditions on which it consents to be sued . . . .' ") (quoting *Beers v. Arkansas,* 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991 (1858)); *Alston v. State,* 97 N.Y.2d 159, 737 N.Y.S.2d 45, 762 N.E.2d 923, 926 (2001) ("[N]othing in *Alden* suggests that a waiver of sovereign immunity must be absolute, unconditional and applicable in all situations."). Therefore, the Legislature should not be deterred in its consideration of this issue by a disagreement or discomfort with particular remedial aspects of the FLSA.

## VIII. Conclusion

{29} We hold that the State has not waived its constitutional sovereign immunity from private suits for damages based on a violation of federal law. We reverse the district court's denial of NMSU's motion to dismiss Cockrell's FLSA claims. We also reverse the Court of Appeals' memorandum opinion to the extent that it remanded Cockrell's FLSA claims to the district court for further proceedings. We remand to the district court with instructions to dismiss Cockrell's FLSA claims and to proceed with any remaining claims in the amended complaint.

WE CONCUR: JOSEPH F. BACA, GENE E. FRANCHINI, PAMELA B. MINZNER, and PETRA JIMENEZ MAES, Justices.