2003-NMCA-038

62 P.3d 1227

James GILL, Plaintiff–Appellant,

v.

PUBLIC EMPLOYEES RETIREMENT BOARD OF THE PUBLIC EMPLOYEES RETIREMENT ASSOCIATION OF NEW MEXICO, Defendant–Appellee.

No. 21,818.

Court of Appeals of New Mexico.

Nov. 21, 2002.

Certiorari Granted, No. 27,823, Feb. 4, 2003.

Hazen H. Hammel, Cates & Hammel, P.C., Albuquerque, for Appellant.

Ellen S. Casey, JeanAnne Chesek, Hinkle, Hensley, Shanor & Martin, L.L.P., Santa Fe, for Appellee.

## OPINION

PICKARD, Judge.

{1} This case is a sequel to *Cockrell v. Board of Regents of New Mexico State University*, 2002–NMSC–009, 132 N.M. 156, 45 P.3d 876. There, the Supreme Court canvassed the authorities leading to *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), and held that constitutional sovereign immunity required dismissal of the plaintiff's suit to enforce his rights under the federal Fair Labor Standards Act because the New Mexico legislature had not specifically waived such immunity by statute. *Cockrell*, 2002–NMSC–009, ¶¶ 4–8, 11, 15, 24, 132 N.M. 156, 45 P.3d 876. Plaintiff here sued to enforce rights under the federal Age Discrimination in Employment Act (ADEA).

Defendant had denied Plaintiff's, a volunteer firefighter's, claim for retirement benefits because the pertinent statute required him to be forty-five years of age or less when he first acquired service credit, and Plaintiff was fifty-four at that time. *See* NMSA 1978, § 10–11A–2(E) (1983). Plaintiff claims that the doctrine of sovereign immunity set forth in *Cockrell* and *Alden* does not apply because he sued under the New Mexico Declaratory Judgment Act, NMSA 1978, §§ 44–6–1 to – 15 (1975), which waives such immunity, and because he can sue for declaratory and injunctive relief under the doctrine set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). We disagree with Plaintiff's arguments and therefore affirm the dismissal of his suit.

### Declaratory Judgment Act

■ {2} Plaintiff states that "Section 44–6–13 of the Declaratory Judgment Act plainly waives state sovereign immunity[,]" citing *New Mexico Right to Choose/NARAL v. Johnson,* 1999–NMSC–005, ¶ 23, 126 N.M. 788, 975 P.2d 841. In making this argument, however, Plaintiff has ignored a long history of jurisprudence under the Declaratory Judgment Act and has read *New Mexico Right to Choose/NARAL* entirely too broadly.

{3} Section 44–6–13 states:

For the purpose of the Declaratory Judgment Act . . . , the state of New Mexico, or any official thereof, may be sued and declaratory judgment entered when the rights, status or other legal relations of the parties call for a construction of the constitution of the state of New Mexico, the constitution of the United States or any of the laws of the state of New Mexico or the United States, or any statute thereof.

The predecessor statute to Section 44–6–13 read:

"For the purpose of this act, the state of New Mexico, or any official thereof, may be sued and declaratory judgment entered when the rights, status or other legal relations of the parties call for a construction of the Constitution of the state of New Mexico, or any statute thereof."

*In re Bogert's Will,* 64 N.M. 438, 443, 329 P.2d 1023, 1026 (1958) (citation omitted). It can be readily seen that the only material difference between these sections of the 1975 Act and the earlier Act is that the 1975 version allows declaratory judgments to be entered on construction of federal, as well as state, law.

■ {4} In *In re Bogert's Will,* the Court reiterated the rule established in *Taos County Board of Education v. Sedillo,* 44 N.M. 300, 307, 101 P.2d 1027, 1032 (1940), and stated,

"We take this first opportunity to correct any impression that [what is now Section 44–6–13] is a general consent on the part of the state to be sued under its provisions. We are agreed that it has no such meaning and has no greater effect, in so far as this consideration is concerned, than *merely to permit parties to sue the state under the act where the state's consent to be sued otherwise exists* and the facts warrant suit."

*In re Bogert's Will,* 64 N.M. at 443, 329 P.2d at 1026 (quoting *Taos County Bd. of Educ.,* 44 N.M. at 307, 101 P.2d at 1032) (emphasis added). The Declaratory Judgment Act creates no substantive rights. *Am. Linen Supply v. City of Las Cruces,* 73 N.M. 30, 32, 385 P.2d 359, 360 (1963); *see Sangre de Cristo Dev. Corp. v. City of Santa Fe,* 84 N.M. 343, 346, 503 P.2d 323, 326 (1972) (stating, in a suit for injunctive relief, that "this Court has consistently held [that] the State of New Mexico may not be sued in the courts without its permission or consent").

{5} Furthermore, the legislature has specifically indicated an intent that the New Mexico Declaratory Judgment Act be interpreted uniformly with other similar statutes and, in particular, with federal law on the subject of declaratory judgments. Section 44–6–15. Under federal law, too, the Declaratory Judgment Act is solely a procedural statute that allows enforcement of otherwise established rights; i.e., it does not create either jurisdiction or rights that do not exist by virtue of other law. *B. Braun Med., Inc. v. Abbott Labs., Inc.,* 124 F.3d 1419, 1428 (Fed. Cir.1997) ("The Declaratory Judgment Act

neither expands a court's jurisdiction nor creates new substantive rights.").

{6} Nor do we believe that *New Mexico Right to Choose/NARAL,* 1999–NMSC–005, ¶ 23, 126 N.M. 788, 975 P.2d 841, helps Plaintiff here. We do not consider the brief, one-paragraph discussion of sovereign immunity in that sixty-two-paragraph, important opinion to be dispositive of the issue in this case. First, the issue of immunity was raised by two citizens who were not permitted to intervene and whose issues were addressed as if they were presented by an amicus. *Id.* ¶¶ 21–22. It is settled law that amici must take the issues as they find them and may not raise issues not raised by the parties. *Wacondo v. Concha,* 117 N.M. 530, 533, 873 P.2d 276, 279 (Ct.App.1994). In *New Mexico Right to Choose/NARAL,* the state admitted the jurisdictional allegations and did not assert that it was immune. *Id.* ¶ 23. Second, the Court described a jurisdictional basis other than the Declaratory Judgment Act pursuant to which it ordinarily hears issues such as those raised in the case. *Id.* Thus, the Declaratory Judgment Act was not the only basis for jurisdiction, as it would be in this case. Finally, we do not believe that the Supreme Court intended to overturn decades of established law without so much as a mention of it.

■ {7} Therefore, we read *New Mexico Right to Choose/NARAL* as consistent with previous law; i.e., the Declaratory Judgment Act waives immunity only to the extent that other statutes allow the claims to be brought in other procedural contexts. For similar reasons, we do not read the discussion in *Ramah Navajo School Board, Inc. v. Bureau of Revenue,* 104 N.M. 302, 309–10, 720 P.2d 1243, 1250–51 (Ct.App.1986), *abrogated on other grounds by Will v. Mich. Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), without mention of cases such as *In re Bogert's Will, Taos County Board of Education,* or *American Linen Supply,* to be an enforceable holding that the Declaratory Judgment Act contains a general waiver of immunity for any declaratory judgment action. *See also Ramah Navajo Sch. Bd., Inc. v. Tax. & Rev. Dep't,* 1999–NMCA–050, ¶ 31, 127 N.M. 101, 977 P.2d 1021 (indi-

cating that Court of Appeals is ordinarily bound by Supreme Court precedent).

{8} In addition, in *Cockrell,* the Supreme Court emphasized that any waiver of constitutional immunity must be clear, unambiguous, and not left to inference. *Cockrell,* 2002–NMSC–009, ¶¶ 19–24, 132 N.M. 156, 45 P.3d 876. It also ruled that it would not find a waiver of immunity under circumstances in which the United States Supreme Court had found that Congress was powerless to act. *Id.* ¶ 23. In *Kimel v. Florida Board of Regents,* 528 U.S. 62, 91, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the Supreme Court held that the ADEA's abrogation of states' sovereign immunity was not a valid exercise of Congressional power under the Fourteenth Amendment. Accordingly, we reject Plaintiff's contention that the Declaratory Judgment Act waives sovereign immunity for his suit alleging a violation of the ADEA.

### Ex Parte Young

{9} Plaintiff contends that his suit for declaratory and prospective injunctive relief is permitted by the doctrine set forth in *Ex parte Young* and analyzed pursuant to the four factors used by the federal courts. The doctrine holds that certain suits against state officers for prospective relief are not barred by sovereign immunity. *See Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The four factors are (1) whether the action is against state officials, as opposed to the state itself; (2) whether the alleged conduct violates federal law; (3) whether the relief sought is permissible prospective relief, as opposed to being in actuality a retroactive award of damages; and (4) whether the suit implicates special sovereignty interests or is the functional equivalent of legal relief that would be otherwise barred. *See Elephant Butte Irrigation Dist. v. Dep't of Interior,* 160 F.3d 602, 609 (10th Cir.1998). Defendant contends that *Ex parte Young* does not apply in state courts and that Plaintiff has not satisfied the four factors in any event. Defendant also points out that *Kimel* involved suits that included prayers for declaratory and injunctive relief, 528 U.S. at 69, 70, 120 S.Ct. 631, and the United States Supreme Court affirmed the entire dismissal

of the suits, stating that, "[b]ecause the ADEA does not validly abrogate the States' sovereign immunity, however, the present suits must be dismissed." *Id.* at 92, 120 S.Ct. 631.

{10} Apart from the difficulties in ascertaining whether Plaintiff's claim for relief is in reality a claim for past and future damages or whether it is merely a declaration of rights with some ancillary effect on the state's treasury, *see Edelman,* 415 U.S. at 667–68, 94 S.Ct. 1347, we do not deem it necessary in this case to analyze the four factors. Nor do we trace the history of the *Ex parte Young* doctrine to determine whether it applies in state courts or whether it is an exception to a restriction applicable only to federal courts by virtue of the wording of the Eleventh Amendment. *See Ramah Navajo Sch. Bd., Inc.,* 104 N.M. at 308, 720 P.2d at 1249 ("Because Ramah sued in state court, this particular aspect of Eleventh Amendment immunity is not relevant.").

{11} The Court in *Alden* made clear that an important aspect of the *Ex parte Young* doctrine was that it was necessary to effectuate the supremacy clause.

> In particular, the exception to our sovereign immunity doctrine recognized in *Ex parte Young* ... is based in part on the premise that sovereign immunity bars relief against States and their officers in both state and federal courts, and that certain suits for declaratory or injunctive relief against state officers must therefore be permitted if the Constitution is to remain the supreme law of the land.

*Alden,* 527 U.S. at 747, 119 S.Ct. 2240. If, because of sovereign immunity, there could be no suit against states or state officers in either federal or state court, then " 'it must be evident that an easy way is open to prevent the enforcement of many provisions of the Constitution[.]' " *Id.* (quoting *Gen. Oil Co. v. Crain,* 209 U.S. 211, 226, 28 S.Ct. 475, 52 L.Ed. 754 (1908)). Thus was the doctrine in *Ex parte Young* born.

{12} The dismissal of the declaratory and injunctive aspects of the suits in *Kimel* may therefore be properly understood as emanating from the same doctrine of supremacy. If the purpose of the *Ex parte Young* doctrine is to ensure the Constitution's supremacy, then a congressional act that is constitutionally outside of Congress's power to enact as against the states should not be permitted to be enforced against the states in any way, either in state or federal court. That the ADEA's abrogation of sovereign immunity is constitutionally outside of Congress's power to enact is clear according to *Kimel,* 528 U.S. at 91, 120 S.Ct. 631. For these reasons, the doctrine of *Ex parte Young* does not help Plaintiff.

## Other Issues

{13} In light of our affirmance of the dismissal of Plaintiff's complaint on grounds of sovereign immunity, we need not consider the merits of Plaintiff's ADEA claim. In affirming the dismissal of Plaintiff's ADEA claim, we express no opinion on whether Plaintiff has or does not have other remedies to enforce any retirement rights that he claims to have. Plaintiff's complaint relied exclusively on the ADEA, as did Plaintiff's briefs, both below and on appeal.

{14} We have considered Defendant's request for sanctions, contained in its motion to dismiss Plaintiff's appeal, which Defendant filed six days after Plaintiff's brief in chief was filed and which was predicated on Plaintiff's brief being eight days late. Plaintiff's attorney explained that he calendared the due date for his brief only a few days after his son was born and when he was not thinking very clearly. Defendant's allegation of prejudice was that it did not know when its brief was due, but the applicable rule states that the answer brief is due forty-five days after service of the brief in chief. Rule 12–210(B)(2) NMRA 2002. Defendant's motion to dismiss was denied, but the request for fees and costs was taken under advisement. Under these circumstances, which involve only a matter of days, which involve an understandable excuse, and which involve a brief that had already been filed, we do not believe the motion to dismiss or the request for the fees and costs incurred in filing the motion were warranted. Nonetheless, we agree with Defendant that it would have been better form for Plaintiff's counsel to

have moved at the time the brief was filed for permission to file the brief late.

**Conclusion**

{15} The order dismissing the complaint is affirmed.

{16} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and JONATHAN B. SUTIN, Judges.